## UNITED STATES SUPREME COURT.

The Steam Vessel Moses Taylor, plaintiff in error agt. Wilson Hammons.

The *state courts* have *no jurisdiction* of civil causes in *admiralty*.

Under the constitution of the United States, and the judiciary act of 1789, the United States courts have *exclusive* cognizance of civil causes of admiralty and maritime jurisdiction.

A *contract* made by a passenger, for a passage to California, with the owner of a line of California steamers, by which, in consideration of $100, the owner agrees to transport the passenger from New York to San Francisco, as a steerage passenger, with reasonable dispatch, and furnish him with proper and necessary food, water and berths, or other conveniences for lodging on the voyage, is a contract of admiralty and maritime jurisdiction ; and for a breach of which, the United States courts of admiralty have exclusive jurisdiction.

*December Term*, 1866.

IN ERROR to the county court of the city and county of San Francisco.

In this case the summons reads as follows:

"State of California.—In the justice's court of the sixth township, in and for the city and county of San Francisco:

"The people of the state of California, to the steam vessel Moses Taylor, greeting:

"You are hereby summoned to appear before me at my office, in the sixth township of the city and county of San Francisco, on the 16th day of November, A. D., 1863, at two o'clock, P. M., to answer unto the complaint of Wilson Hammons, who claims to recover of you the sum of $200 damages, for the alleged non-performance of contract of the said Wilson Hammons, as a steerage passenger, from the city of New York to San Francisco ; said contract having been made with the owner and agent of the steam vessel Moses Taylor, as per complaint on file in this office, when judgment will be taken against you for the said amount, together with costs and damages, if you fail to appear and answer.

"To the sheriff or any constable of the said city and county, greeting: Make legal service and due return hereof.

"Given under my hand, this 12th day of November, A. D., 1863.

"MARTIN W. LAMB, [L. S.]
"*Justice of the peace of said township.*"
[Indorsed.]

"I hereby certify that I have served the within summons, by delivering a true copy thereof to J. H. Blethen, commander of the steam vessel Moses Taylor, at the city and county of San Francisco, this 13th day of November, A. D., 1863.

"J. J. LAMB,
"*Constable, sixth township.*"

"Filed January 2d, 1864.

"W. HARNEY, *D. C.*"

The libel or complaint ends thus: "Wherefore, the said plaintiff demands judgment against the said steam vessel Moses Taylor, for the sum of $200, with costs of suit."

The answer by the agent of the vessel says, that this (the justice's) court has no jurisdiction. "That this court has no jurisdiction of the cause of action in said complaint contained, nor of the said steam vessel Moses Taylor, because, he says, that the said cause of action as against the said vessel, is a cause of action of which the courts of admiralty have exclusive jurisdiction. That said vessel is used exclusively in navigating the high seas, and that said cause of action, if any, arose on the high seas."

The judgment of the township justice of the peace is as follows :

"November 16, 1863.—Case called at one o'clock P. M. Plaintiff by Van Arman, Lane & How ; defendant by Delos Lake, in court. Defendant files an answer to the complaint. John Mulligan, Wm. Harding and A. N. Starling, sworn and examined as witnesses for plaintiff. Plaintiff rests. Case closed and submitted. Whereupon, on the 21st day of November, 1863, this court renders judgment in favor of the plaintiff and against the defendant, for the sum of two hundred dollars damages, and costs of action.

"Justice's fees $5 ; constable's fees $1.75.

"Notice of appeal and appeal bond filed by defendant, December 3d, 1863.

"I hereby certify the foregoing to be a true and correct transcript of my docket of the above entitled cause, and the papers hereunto attached, are all that have been filed with said action.

"MARTIN W. LAMB.
"Justice of the peace, sixth township."

The county court affirmed the judgment of the township justice, and on writ of error, the cause comes before this court.

The plaintiff alleges in his complaint, that Marshall O. Roberts was part owner of the vessel, and agreed to carry him, the plaintiff "from New York to San Francisco, as a steerage passenger, with all reasonable speed, to furnish the plaintiff with proper and necessary food, water and berth, or other convenience for lodging, while on said voyage."

The Steamer Moses Taylor agt. Hammons.

The wrong for which the vessel is made liable is stated as follows : " Yet the said Marshall O. Roberts, did not perform on his part, the said contract ; but on the contrary, failed to carry, or cause to be carried or conveyed, the said plaintiff with reasonable dispatch from New York to San Francisco, and also failed to furnish to said plaintiff proper and suitable food or water, or proper and necessary berths or conveniences for lodging while on said vessel, but the said plaintiff was in fact detained on said passage on the Isthmus of Panama for a long time, to wit, for the period of eight days. In consequence whereof, the said plaintiff was compelled to, and necessarily did, incur heavy expense in procuring board and lodging, and sustained heavy damages in the loss of time ; and that the provisions furnished by the said agent and owner, and by the said boat to the said plaintiff, while on the voyage, were unwholesome, and unfit and improper for the said plaintiff or any other human being to eat, and greatly injured the health of said plaintiff.

" That the plaintiff was crowded into a loathsome, unhealthy cabin, without sufficient room or air for health or comfort, in consequence of a large number of steerage passengers ; more than said boat was allowed by law to, or properly could carry.

" That in consequence of the non-performance of said contract on the part of the said agent and owners, as aforesaid, the said plaintiff has sustained damages in the sum of two hundred dollars.

" Wherefore, the said plaintiff demands judgment against the said steam vessel Moses Taylor, for the sum of two hundred dollars, with costs of suit.

VAN ARMAN, LANE & HOWE,<br>
<em>Plaintiff's Attorneys.</em>

The court finds that the plaintiff was detained seven days on the voyage, and further finds : " That said Roberts failed to furnish to plaintiff, on the voyage from Panama to San Francisco, on board said steamship Moses Taylor, proper and wholesome food, a suitable supply of water for washing purposes, proper and necessary berths and ship room ; and

that said plaintiff, by reason of such detention, and of said failure to supply proper and wholesome food, a suitable supply of water, and proper and necessary berths and ship room, as aforesaid, has sustained damage in the sum of two hundred dollars, and as a conclusion of law, the court finds that this court has jurisdiction of the subject matter of this action, and that said defendant is liable for the damages sustained by plaintiff, by reason of the failure of said Roberts to perform his contract with plaintiff, as aforesaid ; and that plaintiff is entitled to a judgment against the said defendant for the sum of two hundred dollars, besides costs.

" Let judgment be entered accordingly.

" SAMUEL COWLES,

" County Judge."

DE LOS LAKE, attorney, and
EDWARDS PIERREPONT, counsel for plaintiff in error.

The ground of complaint is, that on the voyage from Panama to San Francisco, the Moses Taylor was unlawfully crowded, and the plaintiff did not have the berths, ship room, food or water to which he was entitled. What those comforts were, or to what amount of luxury, a steerage passenger, paying $100 from New York to San Francisco, is supposed to be entitled to, does not appear.

The question in this case is, whether a California justice of the peace can proceed in admiralty against the steamship Moses Taylor, and this involves the question whether such justice of the peace can make a valid decree in admiralty, against a French or English ship.

The case is one of great national importance, and fifty-five other suits await the decision of this.

It seems well settled that on this side of the Rocky Mountains, a village justice of the peace has no admiralty jurisdiction, and that his condemnation in admiralty of a British, French or Russian vessel, would not be respected by the world.

First. The question made by the case is, whether a town-

ship justice of the peace can proceed in admiralty against a foreign steamer, for wrongs or inconveniences suffered by a passenger on the high seas.

If Justice Patrick Larry Maloney, asserting his admiralty jurisdiction in New York, should proceed to a decree in admiralty against a Cunard steamer, on the ground that Biddy did not get as good victuals in the steerage as she had expected, on her voyage to a " free country," a sale of the steamer under such judgment would hardly be respected by the world.

Decrees in admiralty are respected everywhere. If the township justice and the United States judge should issue process against the Cunard steamer Persia, on the same day, the justice would pronounce his decree in six days, sell the ship, and leave the tardier judgment of the United States court a barren remedy. This *concurrent* jurisdiction would be found inconvenient, and foreign nations might complain that the admiralty learning of the village justice of the peace, was not quite adequate to such high jurisdiction, and lead to conflicting judgments and intolerable uncertainty.

*Second.* The principle is the same, whether the passenger goes from Liverpool to San Francisco on the Persia, or from New York to San Francisco on the Moses Taylor.

An agreement to transport a man or a horse over the ocean, is a " maritime contract," and comes under the admiralty and maritime jurisdiction ; and it matters not whether the ship on her voyage stops at Bermuda, Cape Horn or Panama. (*The Schooner Tiltan,* 5 *Mason,* 465 ; *Plummer* agt. *Webb,* 4 *Mason,* 380 ; *Drinkwater* agt. *The Brig Spartan,* *Ware's Rep.* 91 ; *Steel* agt. *Thatcher, Ware's Rep.* 149 ; *De Sovio* agt. *Boit,* 2 *Gallison,* 398 ; *The Sloop Mary,* 1 *Paine's Rep.* 673 ; *Davis* agt. *A Nev. Brig, Gilp.* 473 ; 1 *Kent's Com.* 370, 371 ; *New Jersey Steam Navigation Co.* agt. *Merchants' Bank,* 6 *How.* 344 ; *Bazin* agt. *Liverpool Steamship Co.* 5 *Am. L. J.* 465.)

*Third.* The courts of California have decided that a township justice has admiralty jurisdiction, and can proceed in admiralty against a foreign ship.

In *Taylor* agt. *The Steamer Columbia* (5 *Cal.* 268), the head note reads thus :

" The judicial power of the courts of the United States, in admiralty and maritime cases is not exclusive, and the states have the power to confer that jurisdiction to its fullest extent, upon their own state courts."

Judge HUYDENFELDT, delivering the opinion of the court says (*page* 272) :

" In the case of *Averill* agt. *The Steamer Hartford* (2 *Cal.* 308), we decided that the act providing for actions against steamers, vessels and boats, confers upon the district courts (of California) admiralty jurisdiction *pro tanto*, and the proceedings in such actions must be governed by the principles and forms of admiralty courts, except when otherwise controlled and directed by the act." * * * " In the case of *Gordon* agt. *Johnson* (4 *Cal.* 368), we had occasion to examine and settle the proper rule of construction, as to the judicial powers relatively of the federal and state governments. Taking as our point of departure, the universally conceded principle, that the states are original sovereigns, with all the powers of sovereignty not expressly delegated by the federal compact." * * * " This subject, however, was fully examined in the case of *Gordon* agt. *Johnson*, before cited, and we are satisfied to adhere to our treatment of the proposition as then laid down. It results from the views we have taken, that the states are not deprived by the constitution of the United States, of the power to confer upon their own courts all admiralty and maritime jurisdiction."

" The treatment of the proposition " in *Johnson* agt. *Gordon* (4 *Cal.* 368), was administered by the same learned Judge HEYDENFELDT, and resulted in the following conclusions :

" No cause can be transferred from a state court to any court of the United States.

" Neither a writ of error nor appeal lies, to take a case from a state court to the supreme court of the United States."

It is evident that the learned judge was afterwards more than satisfied with his " treatment of the proposition," in *Johnson* agt. *Gordon* (2 *Cal*). Since in that case he only

decided that the state court had admiralty jurisdiction *pro tanto*. But in *Taylor* agt. *The Steamer Columbus* ( 5 *Cal.*), he decided that the state court had admiralty jurisdiction *in toto*.

I have hopes that this court may not be quite so well "satisfied" with this "treatment," as the learned judge who prescribed it.

*Fourth*. The first section of the third article of the constitution of the United States, is as follows :

" The judicial power of the United States shall be vested in one supreme court, and in such inferior courts as the congress may from time to time ordain and establish."

And the first clause of the second section of the same article, is in these words :

" The judicial power shall extend to all cases in law and equity arising under this constitution, the laws of the United States, and treaties made or which shall be made under their authority, to all cases affecting ambassadors, other public ministers and consuls.   To all cases of admiralty and maritime jurisdiction."   *   *   *

The ninth section of the judiciary act of 1789, declares that " the district courts shall have, exclusively of the courts of the several states,   *   *   *   cognizance of all civil causes of admiralty and maritime jurisdiction ;   *   *   * saving to suitors in all cases, the right of a common law remedy, where the common law is competent to give it."

From the passage of that act until the decision in 5 *Cal. Rep.*, above cited, a period of sixty-five years, the exclusive jurisdiction of the courts of the United States in " all cases of admiralty and maritime jurisdiction," was everywhere conceded.

The discovery was first made by Mr. Justice HEYDEN-FELDT, that in consequence of the " original sovereignty " of California, the judiciary act of 1789 was unconstitutional, and that the courts of the United States had no exclusive jurisdiction in the admiralty, but only concurrent jurisdiction with a township justice of the peace in California ; and the learned judge expressed himself as " satisfied to adhere

to his treatment of the proposition," and with his "point of departure," as he calls it, on account of California's "original sovereignty."

We have here something novel to meet; something quite beyond the pretensions of South Carolina in her boasting days; South Carolina is an ancient state, older than the judiciary act or the constitution. But California was not born until some sixty years after the passage of that act, and then she was fashioned by the power of the United States out of her own territory—bought with a price. It is interesting to hear this *naive* talk about the "original sovereignty of California," which is to override the judiciary act and the uniform decisions of seventy years. Where got California this "original sovereignty?"

We ask the court to smother out this secession brand, before it wrap in smoke and flames of war the Pacific coast, as late it did the Atlantic shore. This was the accursed heresy which bred our fratricidal war; spread woe and desolation over the whole south; consigned to bloody graves five hundred thousand of our youth, and ante-dated death to more than a million of our countrymen.

*Fifth.* The constitution of the United States declares, that "the judicial power shall extend to all cases of admiralty and maritime jurisdiction." And following the constitution, the judiciary act, which has been in force now seventy-seven years, declares the exclusive jurisdiction of the courts of the United States "in all cases of admiralty and maritime jurisdiction."

This exclusive jurisdiction has for seventy years been the settled law, and has been repeatedly affirmed by the courts.

In *Martin* agt. *Hunter* (1 *Wheaton*, 337), the court says: "It is manifest that the judicial power of the United States is, unavoidably, in some cases, exclusive of all state authority, and in all others may be made so at the election of congress. No part of the criminal jurisdiction of the United States can, consistently with the constitution, be delegated to state tribunals. The admiralty and maritime jurisdiction is of the same exclusive cognizance."

The Steamer Moses Taylor agt. Hammons.

An affirmation of this exclusive jurisdiction will be found in the opinion of Chief Justice MARSHALL (*Slocum* agt. *Mayberry*, 2 *Wheat.* 9) ; and of Mr. Justice STORY, in *Gelston* agt. *Hoyt* (3 *Wheat.* 246) ; and of Mr. Justice WAYNE, in *Waring* agt. *Clarke* (5 *How.* 451) ; and of Mr. Justice CATRON, in *Waring* agt. *Clarke* (5 *How.* 466) ; and in the case of *The Bark Chusan* (2 *Story's Rep.* 455).

And in 2 *Story's Commentaries on the Constitution* (§ 1672), it is said that " the admiralty jurisdiction naturally connects itself on the one hand with our diplomatic relations, and the duties to foreign nations and their subjects ; and on the other hand, with the great interest of navigation and commerce, foreign and domestic : there is, then, a peculiar wisdom in giving to the national government a jurisdiction of this sort which cannot be yielded, except for the general good, and which multiplies the securities for the public peace abroad, and gives to commerce and navigation the most encouraging support at home."

And in *Cohen* agt. *Virginia* (6 *Wheat.* 314, 315, 325), it was conceded that the federal courts had the " exclusive admiralty and maritime jurisdiction."

And in *Martin* agt. *Hunter* (1 *Wheat.* 372), Mr. Justice JOHNSON says :  " With regard to admiralty and maritime jurisdiction, it would be difficult to prove that the states could resume it, if the United States should abolish the courts vested with that jurisdiction."

The United States District Court for the district of Missouri, in the case of *Ashbrooks* agt. *The Golden Gate*, says : " The only exception to the exclusive cognizance is not a remedy in the common law courts, but a common law remedy, no matter in what state court it may be brought, or what may be the system under which the court may proceed. There is also a qualification of this saving of a common law remedy.   It can be only in a case ' where the common law is competent to give it.'   This qualification was, doubtless, intended to cut off new remedies which might be devised, but which were unknown to the common law ; for if the common law was not competent to give the remedy sought, then

the party could not resort to any other, but must sue in the United States court in admiralty.

"A suitor cannot, therefore, say, 'a common law remedy is saved to me, and if there be none to effect my object (the seizure of a vessel), I can use any the legislature may have devised for my case.'" * * * "What lawyer ever knew or heard of a proceeding *in rem*, as a common law remedy? Even the actions of detinue or replevin have in them nothing of the nature of proceedings *in rem*. Each requires a plaintiff and defendant, who are persons, and the judgments bind no one but parties and privies. True, a proceeding *in rem* may be used in common law courts of the states, but in all such cases it is given by statute, or is a proceeding under the civil law. And the fact that it is given by statute, and did not exist before the statute which gave it, in states where the common law prevails, shows that it had no existence as a remedy at the common law." * * * "When a court has jurisdiction to proceed *in rem*, and does so proceed, its judgments are binding and conclusive on the whole world, and this is so, whether the tribunal be foreign or domestic (*The Mary*, 9 *Crauch's R.* 126).

"Not so with judgments at common law; they bind only parties and privies." * * * "If there is an average of fifty counties to each state, and twenty justices of the peace to each county, we should then have in these United States thirty-one thousand courts of admiralty and maritime jurisdiction, to say nothing of the courts of record. These courts proceeding against, and seizing and selling vessels of foreign nations and those of sister states, and although they would have all the powers of courts of admiralty, yet they would, in but few instances, proceed according to the maritime law, which is part of the law of nations, nor according to act of congress (for congress can pass no law regulating proceeding in the state courts); but they would proceed according to the statutes of the several states, and usages that would there prevail, each state having a different system. The effect of this must be, it appears to me, to embroil the United States with foreign nations, and the several states with

The Steamer Moses Taylor agt. Hammons.

each other, and to produce retaliatory laws and proceedings, and endless conflict, uncertainty and mischief. And this, I repeat, would render nugatory the provisions of the ninth section of the judiciary act of 1789 ; and the power of congress to regulate commerce (and navigation as incident thereto) with foreign nations, and among the several states. If I am right in the views above expressed, there can be no concurrent jurisdiction *in rem*, in admiralty cases between the United States courts and the courts of the several states."

*Sixth.* The Moses Taylor is a steamship navigating the high seas, owned out of the state of California, and a foreign vessel.

The township justice proceeds against her *in rem ;* not by common law action ; the judgment is against the ship—no execution can issue by virtue of this judgment against any person, or the property of any person ; the vessel alone must be sold to satisfy the decree of the township justice.

He claims to have admiralty jurisdiction, and to proceed by admiralty forms ; and the courts of California decide that he has all admiralty jurisdction, and should proceed according to admiralty forms (5 *Cal.* 272).

It is now for the first time discovered that the judiciary act of 1789 is a nullity ; that the decisions of this court, so ancient, numerous and uniform, are all erroneous ; that a township justice has all admiralty jurisdiction ; that California, but lately a conquered, purchased province of the United States, may, by virtue of her " original sovereignty," set aside the statutes and the laws of the union, and confer admiralty powers upon a village justice.

It is high time that these absurd, disloyal and dangerous pretensions receive their just rebuke.

VAN ARMAN, LANE & HOWE, *attorneys for defendant in error.*

Mr. Justice FIELD delivered the opinion of the court. This case arises upon certain provisions of a statute of California regulating proceedings in civil cases in the courts of

that state (*Laws of California of* 1851, *p.* 51). The sixth chapter of the statute relates to actions against steamers, vessels and boats, and provides that they shall be liable— 1st. For services rendered on board of them, at the request of, or on contract with their respectice owners, agents, masters or consignees ; 2d. For supplies furnished for their use upon the like request; 3d. For materials furnished in their construction, repair or equipment ; 4th. For their wharfage and anchorage within the state; 5th. For non-performance or mal-performance of any contract for the transportation of persons or property, made by their respective owners, agents, masters or consignees; 6th. For injuries committed by them to persons or property ; and declares that these several causes of action shall constitute liens upon the steamers, vessels and boats, for one year after the causes of action shall have accrued, and have priority in the order enumerated, and preference over all other demands. The statute also provides, that actions for demands arising upon any of these grounds, may be brought directly against the steamers, vessels or boats, by name ; that process may be served on the master, mate or any person having charge of the same ; that they may be attached as security for the satisfaction of any judgment which may be recovered ; and that if the attachment be not discharged, and a judgment be recovered by the plaintiff, they may be sold, with their tackle, apparel and furniture, or such interest therein as may be necessary, and the proceeds applied to the payment of the judgment.

These provisions, with the exception of the clause designating the order of priority in the liens, and their preference over other demands, were enacted in 1851 ; that clause was inserted by an amendment in 1860.

In 1863, the steamship Moses Taylor, a vessel of over one thousand tons burthen, was owned by Marshall O. Roberts, of the city of New York, and was employed by him in navigating the Pacific ocean, and in carrying passengers and freight between Panama and San Francisco. In October of that year, the plaintiff in the court below, the defendant in

error in this court, entered into a contract with Roberts, as owner of this steamship, by which, in consideration of one hundred dollars, Roberts agreed to transport him from New York to San Francisco, as a steerage passenger, with reasonable dispatch, and to furnish him with proper and necessary food, water and berths or other conveniences for lodging, on the voyage. The contract, as set forth in the complaint, does not in terms provide for transportation on any portion of the voyage by the Moses Taylor, but the case was tried upon the supposition that such was the fact, and we shall, therefore, treat the contract as if it specified a transportation by that steamer on the Pacific, for the distance between Panama and San Francisco. For alleged breach of this contract the present action was brought, under the statute mentioned, in a court of a justice of the peace, held within the city of San Francisco. Courts held by justices of the peace, were at that time by another statute, invested with jurisdiction of these cases, where the amount claimed did not exceed two hundred dollars, except where the action was brought to recover seamen's wages for a voyage performed in whole or in part, without the waters of the state (*Laws of California of* 1853, *p.* 287, *and of* 1856, *p.* 133).

The agent for the Moses Taylor appeared to the action, and denied the jurisdiction of the court, insisting that the cause of action was one over which the courts of admiralty had exclusive jurisdiction, and also traversed the several matters alleged as breaches of the contract.

The justice of the peace overruled the objection to his jurisdiction, and gave judgment for the amount claimed. On appeal to the county court, the action was tried *de novo* upon the same pleadings, but in all respects as if originally commenced in that court. The want of jurisdiction there, and the exclusive cognizance of such causes of action by the courts of admiralty, were again urged, and were again overruled, and a similar judgment to that of the justice of the peace was rendered. The amount of the judgment was too small to enable the owner of the steamer to take the case by

appeal to the supreme court of the state.  That court has
no appellate jurisdiction in cases where the demand in dis-
pute, exclusive of interest, is under three hundred dollars,
unless it involve the legality of a tax, impost, assessment,
toll or municipal fine (*Constitution of the State, art.* 6, § 4, *as
amended in* 1862).   The decision of the county court was the
decision of the highest court in the state which had juris-
diction of the matter in controversy.   From that court, there-
fore, the case is brought here by writ of error.

The case presented is clearly one within the admiralty and
maritime jurisdiction of the federal courts.  The contract
for the transportation of the plaintiff was a maritime con-
tract.   As stated in the complaint, it related exclusively to
a service to be performed on the high seas, and pertained
solely to the business of commerce and navigation.   There
is no distinction in principle between a contract of this char-
acter and a contract for the transportation of merchandize.
The same liability attaches upon their execution, both to the
owner and the ship.   The passage money in the one case, is
equivalent to the freight money in the other.   A breach of
either contract is the appropriate subject of admiralty juris-
diction.

The action against the steamer by name, authorized by
the statute of California, is a proceeeding in the nature and
with the incidents of a suit in admiralty.   The distinguish-
ing and characterestic feature of such suit is, that the vessel
or thing proceeded against itself, is seized and impleaded
as the defendant, and is judged and sentenced accordingly.
It is this dominion of the suit in admiralty over the vessel
or thing itself, which gives to the title made under its decrees
validity against all the world.   By the common law process,
whether of *mesne* attachment or execution, property is reached
only through a personal defendant, and then only to the
extent of his title.   Under a sale, therefore, upon a judg-
ment in a common law proceeding, the title acquired can
never be better than that possessed by the personal defend-
ant.   It is his title, and not the property itself, which is sold.

The statute of California, to the extent in which it autho-

rizes actions *in rem* against vessels for causes of action cognizable in the admiralty, invests her courts with admiralty jurisdiction, and so the supreme court of that state has decided in several cases. In *Averill* agt. *The Steamer Hartford* (2 *Cal.* 308), the court thus held, and added that "the proceedings in such actions must be governed by the principles and forms of admiralty courts, except where otherwise controlled or directed by the act."

This jurisdiction of the courts of California, was asserted and is maintained upon the assumed ground that the cognizance by the federal courts " of civil causes of admiralty and maritime jurisdiction," is not exclusive, as declared by the ninth section of the judiciary act of 1789.

The question presented for our determination, is, therefore, whether such cognizance by the federal courts is exclusive, and this depends either upon the constitutional grant of judicial power, or the validity of the provision of the ninth section of the act of congress.

The constitution declares that the judicial power of the United States " shall extend to all cases of law and equity arising under this constitution, the laws of the United States, and treaties made or which shall be made, under their authority ; to all cases affecting ambassadors, other public ministers and consuls ; to all cases of admiralty and maritime jurisdiction ; to controversies to which the United States shall be a party ; to controversies between two or more states ; between a state and citizens of another state ; between citizens of different states ; between citizens of the same state claiming lands under grants of different states, and between a state or the citizens thereof, and foreign states, citizens or subjects " (*Art.* 2, § 2).

How far this judicial power is exclusive, or may, by the legislation of congress, be made exclusive in the courts of the United States, has been much discussed, though there has been no direct adjudication upon the point. In the opinion delivered in the case of *Martin* agt. *Hunter's Lessee* (1 *Wheat.* 334), Mr. Justice STORY comments upon the fact that there are two classes of cases enumerated in the clause

cited, between which a distinction is drawn ; that the first class includes cases arising under the constitution, laws and treaties of the United States ; cases affecting ambassadors, other public ministers and consuls, and cases of admiralty and maritime jurisdiction ; and that with reference to this class, the expression is, that the judicial power shall extend to *all cases ;* but that in the subsequent part of the clause, which embraces all the other cases of national cognizance, and forms the second class, the word " all " is dropped. And the learned justice appears to have thought the variation in the language the result of some determinate reason, and suggests that with respect to the first class, it may have been the intention of the framers of the constitution, imperatively to extend the judicial power either in an original or appellate form to all cases ; and with respect to the latter class, to leave it to congress to qualify the jurisdiction in such manner as public policy might dictate. Many cogent reasons, and various considerations of public policy, are stated in support of this suggestion. The vital importance of all the cases enumerated in the first class, to the national sovreignty, is mentioned as a reason which may have warranted the distinction, and which would seem to require that they should be vested exclusively in the national courts—a consideration which does not apply, at least with equal force, to cases of the second class. Without, however, placing implicit reliance upon the distinction stated, the learned justice observes in conclusion, that it is manifest that the judicial power of the United States is in some cases unavoidably exclusive of all state authority, and that in all others it may be made so at the election of congress. We agree fully with this conclusion. The legislation of congress has proceeded upon this supposition. The judiciary act of 1789, in its distribution of jurisdiction to the several federal courts, recognizes and is framed upon the theory that in all cases to which the judicial power of the United States extends, congress may rightfully vest exclusive jurisdiction in the federal courts. It declares that in some cases, from their commencement, such jurisdiction shall be exclusive ; in other cases, it

The Steamer Moses Taylor agt. Hammons.

determines at what stage of procedure such jurisdiction shall attach, and how long and how far, concurrent jurisdiction of the state courts shall be permitted. Thus, cases in which the United States are parties, civil causes of admiralty and maritime jurisdiction, and cases against consuls and vice-consuls, except for certain offences, are placed from their commencement exclusively under the cognizance of the federal courts.

On the other hand, some cases in which an alien or a citizen of another state is made a party, may be brought either in a federal or a state court, at the option of the plaintiff, and if brought in the state court, may be prosecuted until the appearance of the defendant, and then at his option, may be suffered to remain there, or may be transferred to the jurisdiction of the federal courts.

Other cases, not included under these heads, but involving questions under the constitution, laws, treaties or authority of the United States, are only drawn within the control of the federal courts upon appeal or writ of error, after final judgment.

By subsequent legislation of congress, and particularly by the legislation of the last four years, many of the cases which by the judiciary act could only come under the cognizance of the federal courts, after final judgment in the state courts, may be withdrawn from the concurrent jurisdiction of the latter courts at earlier stages, upon the application of the defendant.

The constitutionality of these provisions cannot be seriously questioned, and is of frequent recognition by both state and federal courts.

The cognizance of civil causes of admiralty and maritime jurisdiction, vested in the district courts by the ninth section of the judiciary act, may be supported upon like considerations. It has been made exclusive by congress, and that is sufficient, even if we should admit that in the absence of its legislation the state courts might have taken cognizance of these causes. But there are many weighty reasons why it was so declared. "The admiralty jurisdiction," says

Mr. Justice STORY, "naturally connects itself on the one hand with our diplomatic relations, and the duties to foreign nations and their subjects ; and on the other hand, with the great interests of navigation and commerce, foreign and domestic. There is, then, a peculiar wisdom in giving to the national government a jurisdiction of this sort which cannot be yielded, except for the general good, and which multiplies the securities for the public peace abroad, and gives to commerce and navigation the most encouraging support at home " (*Com.* § 1672).

The case before us is not within the saving clause of the ninth section. That clause only saves to suitors " the right of a common law remedy, where the common law is competent to give it." It is not a remedy in the common law courts which is saved, but a common law remedy. A proceeding *in rem* is not a remedy afforded by the common law ; it is a proceeding under the civil law. When used in the common law courts, it is given by statute.

It follows from the views expressed, that the judgment of the county court must be reversed and the cause remanded, with directions to dismiss the action for want of jurisdiction.

And it is so ordered.